Yes, your honors. Thank you very much. Good afternoon. Kirk Hanson for the appellants and the plaintiffs. And I'd like to reserve five minutes of my time for rebuttal, too, please. Thank you. Well, your honors, we finally heard back from the California Supreme Court on Labor Code Section 226 as it applies to, in particular, interstate transportation workers, which, as you recall, those are the type of workers we have in both of the classes in these cases. And I think just at the outset, I want to point out that the California Supreme Court did appear to be pretty concerned about protecting these type of workers. And the rule they came up with was Labor Code Section 226 applies to interstate transportation workers if they do not perform a majority of their work in any particular state, but they are home-based in California for work purposes. So the connection the California Supreme Court drew was you have a contract that is significant enough if you are home-based in California. What is meant by home-based in this context? Yeah. And the California Supreme Court gives us actually a good bit of guidance on that. So actually, at page 755 of the opinion, the court states that you're home-based in California for purposes of Section 226 if, and I quote, if California serves as a physical location where the worker presents himself or herself to begin work. So I think what they're saying there is if you basically start your shift in California and presumably end your shift there as well, even if you don't perform the majority of work in California or any other state, California is going to protect you by ensuring that you have, that the employer is required to issue these people a wage statement that complies with the requirements of Labor Code Section 226. So could I just ask, I had the impression that the airlines had a concept of domicile, like a given flight attendant or pilot was based out of San Francisco Airport or San Jose Airport or whatever, not just for a particular shift, but in a more ongoing way. But so you just talked about starting and ending your shift, but am I right that it's more of an ongoing thing for a particular employee? I think the word, yeah, that's a good question. The word domicile is used by United Airlines. That is equivalent to home-based, which means that the flight attendant or the pilot begins or ends their shift typically at that home-based airport. And we know, actually in this case, we have the facts in the record to show who is domiciled in California for purposes of being home-based under the Supreme Court's rule. And it's actually on the pay stubs themselves. So if you actually look at the pilot's pay stubs and the flight attendant's pay stubs, there's actually a category on the pay stub that says location, and then it lists the airport that they're home-based out of. And that's in the record in the Ward case at pages 345 through 356. And in the Mid-Riod case, it's at pages 436 through 440, where there's examples of the actual pay stubs. So on the pay stub, it says location. That means that's where they're domiciled for purposes of beginning and ending their shift. Additionally, the actual pay records, the actual electronic timekeeping records, although they're a bit If you look on those records, for the pilots, it's called the pilot pay register, which is just another name for the timekeeping records. And that's in the record in the Ward case at pages 386 through 392, and in the flight attendant case at page 355. But what those time records show for both pilots and flight attendants is that there's an actual column that says base, and below the baseline item, it says the airport they're based out of. For example, in Mr. Ward's case, he was a pilot based out of San Francisco, so it says base SFO. Paul Bradley and Felicia Mid-Rio are based out of Los Angeles Airport, International Airport. So it says base, and then it says LAX. So I think that the key thing about the Cal Supreme Court's test is that in particular in this case, we're not talking a lot of burden for United to comply with the test. And here's why. We already know, based on the facts in this record that are before this court, United has already determined that neither the pilots nor the flight attendants perform the majority of their work in any particular state. So item one of the California Supreme Court test is satisfied. We have workers that are interstate workers, and they perform many different states. Item number two would also be satisfied, though, without much burden, because United knows where their pilots and where their flight attendants are home-based. You know, and I'm sure they have a record beyond what's in the pay stubs, you know, time records, but certainly United knows what airport those workers are based out of. So, you know, United's made a dormant commerce clause argument that they're saying that, well, this new test by the California Supreme Court for interstate transportation workers is just too complicated, too burdensome, and we want to pass on that. But that's just not true. I mean, like I was just saying, they already know these workers do not perform the majority of their work in any one state, and they already know where they're based. So determining which pilots and flight attendants are covered by California's labor code section 226 is not an onerous burden for them. Sure, there could be some burden, just like there's a burden to comply with any law, but the burden they have to show is a clearly excessive burden to win their argument under the dormant commerce clause. And I can't think of any situation here where United could argue based on the facts here that complying with labor code section 226 is clearly excessive. Yeah. Can I ask you, there's a separate branch of the dormant commerce clause jurisprudence that says, wholly aside from the pike balancing test, that one state is not permitted to basically project its law into other jurisdictions and control the conduct that occurs there. And I guess I'd like to hear your response to that line of cases, because, you know, here we have workers who, I don't know what the average is, but it's a small percentage of their time that they're actually working in any sense of the word in California. The vast majority of their time is spent working in other states. And so why is it that California's law regarding the presentation of wage statements should govern all of the time that people have spent working in other states? Well, I think, two responses. I think first, you know, the rule that the California Supreme Court has come up with for transportation workers, it doesn't discriminate against any other states or even workers because it's not, has nothing to do with state residency. The court, in fact, rejected the argument that state residency should play a factor in determining whether labor code section 226 applies. Because you can be a resident of a different state, Nevada, for example, but if you're home-based in California, in other words, again, that's where you start and end your shifts, that labor code section 226 applies. So I don't think there's a situation here where California is even projecting its laws into other states. It's saying, if you're coming into the state as a worker, then we want you to have a pay stat that shows you how many hours you worked each pay period and the applicable rates. So I don't see California in that respect interfering with other states' laws. And remember, in the record here, the facts are very clear. There's nothing in the record that shows these workers are performing a majority of their time in any state. So if you had a situation where that was true, and then United would be arguing, wait a minute, we need to, you know, we have to do a separate analysis because this worker may be performing all their time in Arizona, that could be a problem. That's not the situation here. You know, we have the detailed declaration of their high-level corporate witness, Kevin Spars, who's their managing director and assistant controller. He looked at vast amounts of data for both the pilots and the flight attendants. And based on that data, and I know it's in the record, he testified in his declaration that United determined that the pilots rarely, if ever, perform more than half their work in any one state. That's a direct quote from his declaration. No, I understand that. But you sort of dodged the main point that I'm asking, which is that the justification for applying California law is that the person, you know, performed the work in California. That makes sense. Nobody would dispute California has the right to regulate how workers who work in California have their wage statements presented to them. But that's not really what we're dealing with. We're dealing with workers who are spending the vast majority of their time elsewhere, regardless of whether it's in any one given states, not in California, is the main point. And so I guess let me just put it in these terms. In your view, under the same analysis that you're advocating for here on the Dormant Commerce Clause front, could California say that its minimum wage or overtime regulations also govern the vast majority of the time these folks are spending working in other states? No, I don't think so. I think especially in this particular case, the California Supreme Court was very careful to say that it was not making such a broad rule. No, no, I'm asking you as a constitutional, as a matter of constitutional law, if we adopt your argument here and say that California is entitled to impose its wage statement presentation requirements on 100 percent of the work that somebody does, as long as they're home based here, even if, you know, 90 percent of that work is outside of California. What's the, from a constitutional standpoint, what's the difference between saying that's OK, but it sounds to me like you're going to say, but it wouldn't be OK for California to do the same thing with respect to minimum wage and overtime regulations? Well, I think that goes to the difference between the statutes we're talking about, though. So, for example, in your example of overtime or wages, that's, you know, that's a totally different thing than the actual pay stub. So what is the purpose of this pay stub disclosure, if not to ultimately allow California to determine whether things like minimum wages and so forth are being complied with? Well, I think, remember, the purpose of the statute was as multipurposes. One of the purposes is to make sure that you have enough connection to California, either you're performing the work in California or you're home based in California, that you have a very good understanding of how you're being paid so that you won't be shortchanged on your wages. I mean, that's the public interest we're talking about here with Labor Code Section 226. It's a very high interest to make sure that workers, especially hourly workers, are getting paid the proper wages. And so I think you have to take a look at that. But, we've got to be clear, Labor Code Section 226 is not a wage statute, though. It's strictly, you know, the Supreme Court of California has determined that if you're home based in California and you start your shift—remember, it's a little more detailed than that—if you actually perform work here because you start your shift in California is what they're saying. That means you're home based here and you come back here. So if you start your shift here, you come back here, which is the case with the plaintiffs in this case. That's a significant interest so that when you get paid, you want to make sure that worker has a pay stub that explains how many hours you're getting paid for and what's the hourly rate is. I think that's different. So really, in that respect, it doesn't matter really where the work's done. This statute in place is strictly informing the employee as to how they're getting paid so they can make sure they got paid correctly. And that's how the case came to be in the first place. Charlie Ward, the pilot, could not understand his pay stub because the information that he needed to figure it out was not there. Sounded like you might have started in response to Judge Walker's question to talk about whether this statute discriminates against out-of-state companies. I wasn't sure if you had like a threshold argument that we don't even get to the pike balancing because there's no it's clear I think in the California Supreme Court's decision because it doesn't discriminate against it applies the law equally. It doesn't matter if you're an in-state or out-of-state resident. If your home base here is an employee, it covers you. But likewise for an employer, it doesn't make any difference whether you're a California employer or an out-of-state employer. The law doesn't change based on that on those criteria. In other words, the law applies evenly across the board to any employer in-state, out-of-state. It applies evenly to the worker, even if they're not they don't reside in California. Maybe they reside in another state. But California is where they show up for work. I think that was the distinction that the Supreme Court came up with is that you show up for work in California. That's where your time clock starts. And that's also here where the time clock ends. They go back to their home base for work. That is a significant contact with California that requires the employer to provide them with a pay step showing them how they got paid. I think I hope I answered the question. The law, I can't see any way the law here discriminates against any in-state or out-of-state employer. It just applies evenly across the board. Can you go back just to the question I posed before because I didn't grasp your answer? Why are minimum wage and overtime laws different? Well, I think those laws really depend on, you know, you have to perform an actual amount of work in California. I think the cases on that, you have to actually work in California to do the work. Why from a constitutional standpoint, if California can project its law into other states with respect to work done there as to the wage statement presentation? I'm just that you've made that, hey, you have the most significant contact with our state. You're home-based here. You start your shift here. You come back here. We, in the interest of protecting our, quote, unquote, our workers, want to make sure that they're paid, you know, California's $15 minimum wage rather than, you know, some other states. They have the bare minimum that the federal law. Why can't California say the same thing as to the minimum wage? I just don't understand. Well, I don't think California, well, California has never said that. In fact, I think California has said the opposite. I know. I'm asking you a hypothetical question. I'm just trying to get you to explain to me why is it different? If we're going to rule for you here, why would we be able to say in the other context that no, California would not be entitled? Or do you think California would be entitled to impose its minimum wage on work done? No, I don't think they would. I don't think they would. I think the difference is, again, because the purpose of Labor Code Section 226 is quite different than a minimum wage statute. Remember, under a minimum wage statute, then you're pushing your law as to how much someone's actually going to get paid into another state. It's a substantive law that controls the actual payment of wages, whatever state you go in. So I think that would be a problem. And I think California has taken the position that they will not do that. A pay stub is different. The pay stub law has no requirement for wages. It doesn't tell you how much you have to pay minimum overtime. It has nothing to do with that whatsoever. You have to list the employer's address. You have to list the employer's work, name of the employee, of the employer, those kind of things. But there's no requirement in the statute that says how wages have to be paid. All it is is that when the wages are paid, the employee has to know how they're getting paid. And I think California, for purposes of the Labor Code Section 226, says if you're based for work purposes here, that contract is enough to make the employer have to provide you with a pay stub. And they were careful in their decision also to say that we wouldn't necessarily hold the same thing. And in the past, they have not held the same thing. Yeah, great. I was just going to say, Bonnie, if you could stop the clock and you've done that. Kwame, can we try to get Mr. Hansen back? I'll give Mr. Hansen a call. Okay, thanks. Sorry about that, Judge Watford. Do you want me to add a few seconds back on the clock? No, no. You were quick. I think we're good. All right. Thank you. Okay. Judges, Mr. Hansen is not answering his phone. I'll try him again, and I'll also try an email. Okay. He's not answering his phone because he's still answering Judge Watford's last question. He probably turned off his ringer because of the oral argument. Mm-hmm. Judge Watford, I turned off the public audio. Do you want me to announce a recess or anything? A quick recess? Sure. Okay. Yeah, that's a good idea. All right. I'll turn the public audio back on for that. All right. Thank you. This court is in recess for 10 minutes. Okay. Okay. Judges, I was able to reach Mr. Hansen. He's trying to get back in. It looks like he had network issue, and he has the information to come in by phone if he's unable to make it by video. Great. Okay. Thanks, Quinn. Okay. Okay. Okay. All right. Mr. Hansen, do you hear me clearly on the Zoom call? I can. Can everybody else hear me? Yes. Okay. I've hung up the phone. I apologize for that. Just give us one second. We're ready to go? This court resumes its session. Okay. I'm back. I apologize, Your Honors. I'm not sure what happened there. But I think before I got cut off, I was answering the question from Judge Watford about are we trying to push California law, basically on the pay stub case, out into other states. And I think my answer was, I don't believe so, no. You know, I think the California Supreme Court wanted to make sure that workers, like the workers in this case, are protected by Labor Code Section 226, whether they're home-based in California. And so that's what they did. But I think, you know, if you're talking about pushing a minimum wage or overtime statute into another state, I think California, even in the decision in this case, was careful to point out that the rule that they have for interstate workers is only applicable to a pay stub claim. Meaning they want someone who's based here, someone who reports for work in California, and actually ends their shift here, too. They believe that's a significant contact with California, and they have a right to have a compliant pay stub. They were careful not to push it beyond that, though. They were careful to say they weren't making any statement about overtime laws or minimum wage laws. Yeah, I know, I know. And I think going back to, I think United's main argument is a burden argument. I don't see, you know, definitely not a clearly excessive burden here. And I'm not sure what burden there is at all, quite frankly. This is a case where there's already a pay stub in place. You know, this is not, we're not asking United to create a new pay stub from whole cloth. You know, all of my clients have been receiving pay stubs the whole time they work there. The only problem is there's key information that's missing. You know, the hours worked at the applicable rates. Now, in the flight attendant's pay stub, there's actually columns for that. So the information can be put in there, but it's just blank. In the pilot's pay stubs, there's a number of hours, but there's no rate. But you can't divide the hours into the gross pay because I wouldn't give you the applicable rate because there's several different applicable hourly rates for regular pay. And so I don't think you have a pay stub that's already there. They have the data because in order to process payroll, they have to know the hourly rates and the hours worked. We're just asking them to put that information into the pay stub. And now we're asking them to do it for pilots and flight attendants who are home-based in California. That is, those that report for work and then finish their shift in California. And finally, I think on the burden issue, you know, we submitted a chart. I think it was at the end of our original opening brief for the Ninth Circuit. I think it's at page 59. But if United just fills in these couple, these few blanks, then the pay stub would be in compliance with all the other, I think it's 37 or so states that actually have pay stub requirements. So, you know, if they put that information in there, I believe they're in compliance with any state that has a law. But bringing it back to this case, you know, we have workers that don't perform work in any one state. That's undisputed. And we know that the plaintiffs are home-based in California because it says on their pay stubs. It says San Francisco and LAX. So this is not a hard thing for United to do to comply with it. It's definitely not a clearly excessive burden, which is what they have to show under the Pike View Brisk Church. You've used up all your time, but we'll give you a couple of minutes for rebuttal. Thank you. Let's hear from counsel for United. Rebutted. Sorry. Try that again. Good afternoon, Your Honors. May it please the court, Adam Koswini for Eppley United. Let me start at the end there, just because I don't want to lose track of it during the course of this.  And if you look at his chart in the back of his original brief, you know, before the certification to the Cal Supreme Court, it's actually very obvious that there are different provisions in different states that sometimes conflict with each other, that are sometimes different. And even if we could do what appellant is suggesting in terms of dropping in a little bit of additional information to these pay stubs, it would not necessarily mean we're in compliance with some other state. And I go into this in some detail on page 42 of my original brief before this court. But, you know, for example, Texas law requires that an employer's signature appear on the on the wage statement. California law does not require that. So there's a difference and a distinction there. You know, Alaska requires specific. I don't understand that to be a conflict in the sense that you can't comply with both at once. So it seems like you could have a California wage statement and put a signature at the bottom. And now you comply with Texas and California under that example. Don't you? Sure. I mean, if you want to look at it from the perspective of, OK, you know, every jurisdiction's wage statement law could possibly apply. And so, therefore, we just have to come up with this, you know, wage statement that applies everywhere. It's possible to do that. But, again, I think it begs the question a little bit, Your Honor, because it assumes that every jurisdiction has the power to sort of require that and to do that, no matter, you know, sort of how much time someone spends in their jurisdiction, whether or not they're based or domiciled there, whether or not they live there, et cetera. And so to say that, you know, for a highly mobile group of employees like this one, that, you know, every single state's wage statement law applies to everyone and has to be complied with all the time. I think, to be honest, that that probably proves a little too much. I guess I don't understand that to be what California has said, at least about California. I mean, it seems like California is being pretty careful to say that at least if everyone applied an analogous rule, it would be California for these employers, employees, sorry, and maybe it's New York for the ones based in New York, but that none of them are going to be in two states. That's at least how the California Supreme Court seems to have understood how this would work. Well, I mean, that is, your honor, what the California Supreme Court has said. But the California Supreme Court can't speak for other jurisdictions and they're not necessarily bound by the California Supreme Court's decision. We know Massachusetts, for example, follows a very different test. They believe that, you know, their laws protects their residents and their residents travel outside of Massachusetts. Massachusetts law follows them. New York law, you know, I guess I'm not sure why that's our problem here today. So California is saying for workers based in California, we think you need to have this California wage statement. They believe that it will only apply in California. No one else will be trying to control these same workers. But I suppose if Massachusetts tries to, you could sue in Massachusetts. Right. But I'm not sure why we should anticipate that in this case. Can you explain why we should. Happy to, your honor. And let me just also flag, by the way, that it's not just two to six is, you know, sort of requirements about formatting. But, you know, other things are also governed by these states in these statutes, such as frequency of pay and other things that, again, if California is requiring a certain amount of frequency and Texas is requiring a different amount of frequency in Massachusetts. The reason it matters for this case is because even though California, the California Supreme Court tried to somewhat, you know, limit the application of its opinion by in the manner that you're suggesting, that doesn't affect, you know, that doesn't bind other states. And so the burden analysis that the judge also in the word case engaged in and the board and the burden analysis that we discussed in our brief is something that the court is something. Excuse me, that United has to do now under the California Supreme Court's test to avoid situations where there may be conflicts, where there may be dual regulation and what have you. So the idea, again, what you mean. So it seems like after this decision in California for any employee based in California, you have to give a California wage. And then that seems like the end of the story. And I'm not even sure it's right to wonder what would happen if some other state tried to enforce against the same employees. We don't have one yet that I know of where that's happened. Right. Well, I, I don't. With respect, Your Honor, I don't think it's correct that all we have to do is go based on where the where the flight attendant is domiciled, because the California Supreme Court added on to that and said unless they spend half of their time in another jurisdiction. And that is why, as explained in the briefing, what United is going to have to do and what every airline is going to have to do is track for every bid period and where all of the time is spent of all of these pilots and all of these flight attendants. Figure out didn't say we will find you if you give a California wage statement to someone who happens to not need one. I mean, the worst case that would happen is you give a California wage statement to someone based in California who for one wage period happened to work 50 percent of the time in New York. But that doesn't violate California law that you gave an extra wage statement. So I don't understand why you need to figure out whether they spent 50 percent of their time in New York. Because it's not just California's wage laws that we need to comply with and we need to worry about. United can't can't open itself up to liability in New York or Alaska or Massachusetts or wherever by ignoring those states laws, even though their pilots and their flight attendants fly into those states. Can I ask you this? What other states right now are you being forced to comply with the wage statement presentation laws? I'm not aware of any other wage statement, but that's what I thought. So so I take Judge Freeland's point to be quite, quite on the money that right now you're not worried about that because none of these other states is coming after you for not complying with their wage statement laws. All you have to do to comply with California's law is, as she said, just simply provide a 226 compliant wage statement and you're done. I, too, I guess, fail to see, other than just based on pure conjecture, why there's this huge burden that's being imposed on you. There's certainly no evidence in the record before us that suggests that there's some massive burden that's awaiting you out there. Well, there's no evidence in the record to show that we're subject that we're currently subject to wage statement litigation specifically in another jurisdiction. No, there is, I think, a lot of evidence in the records showing the burden of having to track all of this to determine whose laws apply. And I just I mean, with all due respect to the court, I'm struggling with the concept that United, just based on what California Supreme Court has said about California law, that there's some suggestion now that they shouldn't have to worry about the law of other jurisdictions just because they haven't been sued there yet. I mean, they need to figure out what they need to do to comply with the laws and the jurisdictions they operate in. Should those laws apply? I take it your argument is that the burden comes about not because of what might be required in this particular case, but because United, if this court determines they must supply these wage slips, would be foolish not to believe that the same application could be made in any state under the same theory, and therefore would have an almost natural tendency to try to comply with all the wage requirements, even those well beyond those that have been applied in this case. So I'm not sure I agree with that argument. I think that's the argument. Yes, I think that is the argument, Your Honor. I mean, United's initial position, obviously, as briefed before the lower courts and this court, is that for the reasons that we've explained, we don't think these laws should apply in the first place. But the California Supreme Court has now said, you know, here's our test for why we think they should apply, at least in certain instances, and here's how you need to figure that out. The figuring that out piece, i.e., figuring out whether, you know, Charles Ward, Felicia Vidrio, or someone else spends 50 percent of their time in New York on a layover or, you know, spends a significant amount of time in Alaska, you know, flying up there, or, you know, whatever the case may be, given the frequent changes in the flights that these employees engage in, the fact that United doesn't control, by the way, what flights these employees fly on. They have control over that themselves unilaterally. So, United, if they're exposed to litigation in California, there's no reason at all to believe that they're not going to be exposed to litigation in other jurisdictions. By the way, just because they haven't been exposed to wage statement litigation specifically does not mean that they're not subject to, you know, frequent litigation and other wage and hour issues in other jurisdictions. There's no reason to believe that wage statements are, you know, a unique thing to California when, you know, close to 40 states in the union all regulate it. So, if they have to do this, if they have to comply, then they have to engage in this tracking that Judge Alsop specifically found was burdensome under pipe balancing. Okay, can I just stop you again, though? So, I assume you have gate agents, people who stand in the airport at the desk when you check in, who are always in that airport. So, I assume United is complying with wage statements in all the states for those people. And I just am not understanding why it's harder to comply when the rule that California has told us for the wage statements is it's for the people based in California. So, you just treat them like the people who stand at the gate, and then, you know, if Washington or Maine tries to do something crazy and overreach, then we can deal with that in Washington and Maine. But I don't understand how it has to do with whether California overreach. Well, I mean, I would have two responses to that, Your Honor. First of all, the gate agent under in no way, shape, or form, and there's no argument that they're working in any other jurisdiction than California. So, with respect to the gate agent, United knows whose laws apply. There's certainty. There's no need to engage in tracking or anything else to figure out whose laws apply. The person is working all the time at SFO or LAX or whatever, and so California law applies. That's a very different situation, again, than a pilot or a flight attendant who spends the briefest possible amount of time in California, spends the majority of their time in federal airspace, spends additional time, oftentimes more time than in California in other jurisdictions. And we have to concern ourselves about whose law applies. The other thing is that the compensation, the specific compensation that applies to gate agents is very, very different than, you know, the type of compensation that applies to either flight attendants or pilots. Now, you know, gate agent compensation isn't in the record, but I can represent to the court that that is your traditional hourly sort of compensation. Gate agents, they have an hourly rate of pay. They work a certain number of hours. They're paid that. What is in the record in the front of this court in both Ward and Vidrio is the fact that pilots and flight attendants are not paid in that manner whatsoever. Pilot and flight attendant compensation is extraordinarily complicated. The easiest way of thinking about it is, as explained in the briefing, is that there's three different types of compensation, and each of those types is complicated in its own right. But if we summarize, there's three different types of compensation that can apply on any given, you know, bid period for any given flight attendant or pilot. And a lot of those are not based on hours worked. Now, one of plain, an appellant has two main arguments in this case on the merits. One has to do with the P.O. box and whether a P.O. box is sufficient. And the other is sufficient to have an address, have an address as a P.O. box. The other argument is, is that we don't have hours associated with rates of pay. And the reason for that is that in many, many instances, these pilots and flight attendants are not paid based on hours and rates of based on hours worked in rates of pay. There are other methods that they've agreed to, which, by the way, the California Supreme Court has clarified in Ward and also in the companion case in Oman. The California Supreme Court is perfectly fine with these other types of compensation. There's three different. And this seems like a merits argument, not a not a dormant Congress clause or preemption argument. Are you saying that? OK, we're just we're complying anyway because our formula just doesn't look like the way the plaintiffs are saying it should. But it is compliant. Well, you can think of it as a merits argument. You can also think of it as an R.L.A. preemption argument, which we've briefed before this court, but was never never addressed by the lower courts. And I can get into that if it would be helpful to the court. So it is, in part, a merits argument. It's, in part, you know, an R.L.A. preemption argument. But it is also an A.D.A. pike, excuse me, a D.C.C. pike balancing type of argument as well, because, again, it goes to the burden. The reason that, you know, that there isn't just a number filled into that hours and rates of pay column in these in these pay stubs is because in many instances it does not exist. And for for for United to then try to comply with 226 and, you know, in some way, shape or form, generate a number that complies with the procedural requirements of 226, even though the California Supreme Court itself is fine with the substantive provisions of California labor code and wage order not not applying, that is in and of itself another form of burden. They're going to have to either change forms of compensation. They're going to have to rejigger systems. They're going to have to figure out some way to show this number that 226 wants to be in there, even though that's not how they're paid. And California law and the California Supreme Court is perfectly fine with the fact that they're not paid that way. So you wind up with a situation where the proverbial cart is driving the horse. The purpose of 226 is to allow employees to figure out whether they're being paid in compliance with California's substantive labor code provisions and wage order provisions. Here we have a situation where the Supreme Court has made it clear that those substantive provisions don't apply. But we still want you to fill in this procedural requirement for 226. What that goes to the local benefit or the lack of local benefit under under the pike balancing test. We have people here who spend virtually no time whatsoever in California. The majority of their time is spent in federal airspace and is spent in a bunch of other states that they that they travel to in an ever changing number of states, depending on what routes they bid for, what routes they swap for, et cetera. And so you've got a situation here where there's virtually no local benefit to this, to this law. It's not protecting California residents because California Supreme Court has made clear that residency is not relevant here. It's not helping enforce California's substantive labor code provisions because they've also made clear that those are that R.L.A., that the R.L.A. exemption of the wage order nine exempts, you know, you united from having to comply with those. And instead, the operative burden, the operative document is the collective bargaining agreement. And so you have a situation where even though there's virtually no local benefit whatsoever to anyone and there's no you know, and they're perfectly fine with not paying pursuant to the CBA and not pursuing paying pursuant to the labor code. But you're still going to be a you have to figure out whether or not 226 applies from a substantive perspective. And again, it's not just domicile. It's domicile unless they spend 50 percent of their time somewhere else, which, again, does require shift by shift, person by person, month by month review of sort of where there's over comply, though. I mean, and it seems like your own employee represented to the California Supreme Court that it doesn't exist. The more than 50 percent in any state. So they trusted that and then wrote a rule. So I don't understand how you can then back out of the idea that there is a state in which anyone is working 50 percent. That's not what that's not what Mr. Sparks said. If you go back to the declaration and you read what Mr. Sparks said, he said that it was rare if ever was his exact quote. He's saying it doesn't happen a lot. And again, he was saying that in the context of a federal of the federal statute regarding state taxation, which is forty nine USC, forty one, one, six. And that gives you just. I'm sorry. Let me just let you finish, because I don't understand the difference between the tax reason for living in or sorry for working in a place or this reason for working in a place. It seems like they're exactly the same. I would disagree with that. So the state taxation statute that I that I just cited gives the employer the discretion to apply taxes based on one of two things. Residents or where it's someone spends more than 50 percent of their time. So it's you know, you could choose either one of those, you know, is fine from a state taxation perspective. And so what Mr. Sparks said was, was that United, because it is not common for people to spend more than 50 percent of their time in any one jurisdiction, they go with residency, which is the other allowable option under this statute. And so they apply taxation based on residency. That's not the same thing as what the Supreme Court has said. The Supreme Court has said it's, you know, if you spend 50 percent of your more than 50 percent of your time in another jurisdiction, then we're not going to say our law applies because we're going to assume that this other jurisdictions law applies. So it's not like a safe harbor, like the state taxation statute, which Mr. Sparks was talking about, where they can just make an assumption that because something isn't common, they'll just go with something else under the test. But that the Supreme Court articulated in the ward case, they're going to have to, again, to figure out where they're going to comply and where whose law they have to comply with. They're going to have to ask again. I don't understand that because do you. Is it your position that if you give a California wage statement to someone who happens to have been in a delayed flight situation in Maine, so happens to have been for one work period, 50 percent of the time in Maine and a storm that you're going to have a fine or some violation of California law for giving the California wage statement to that person? Not of California law, but if that jurisdiction then applies its law and the law is different than the California law, then we're subject to litigation. But that has nothing to do with what the California Supreme Court said. I mean, the California Supreme Court says if you're based in California, you have to give the wage statement. If you work more than 50 percent somewhere else, you don't have to give the California wage statement. But they're still, to comply with California law, all you have to do is give the wage statement to everyone based in California. If Maine has something else, that's another problem. But nothing in California tells you you have to calculate Maine. It's not another problem because that is why there are principles like the Dormant Commerce Clause, ADA preemption, other things like that, is to save companies from being whipsawed and litigation and uncertainty by a multitude of different regulations that do not align with each other, all applying arguably to the same individual. I mean, that's why the analysis is important. Thank you. I think I'm out of time, so unless anyone has any other questions. Well, I had one question. Remind me how flight attendants are compensated. Flight attendant compensation is similar to the pilot compensation that I mentioned. There's, I believe, in most instances, two different alternative calculations as opposed to the three. But, again, sometimes it's hourly. Sometimes it's a guarantee based on CBA provisions. And then there are a number of other sort of bonus payments, if you will, on top of that for things like, you know, are they in the A position? Are they in the B position? Is it a flight of a certain length? I mean, there's pages and pages of things. But it boils down essentially, ultimately, to you may be paid on an hourly rate plus, or you may be paid based on, you know, a calculation of the CBA that's designed to give you sort of a floor of compensation. So the company does already calculate their hours. They calculate their hours as that is defined under the CBA and as that's defined as far as duty hours under the FAA, yes. Okay. Okay. Very good. Great. Any other questions, Judge Raycox? No. Thank you. Great. All right. Thanks very much for your argument. Let's put two minutes on the clock for counsel for the plaintiffs. Okay. Thank you, Roger. Just very quickly, I just want to make sure we clarify the factual way these people get paid. They do get paid by the hour. Now, the only time they do not get paid by the hour is if they don't make enough by the hour of a particular bid period or month, then they have a fallback number they get paid. But that's even a number of hours. So these people are absolutely paid by the hour. They have an applicable rate and the number of hours they work at each rate. And that's all we're asking that they put in the pay stub. You don't need to look at the collective bargaining agreement to make that determination. We're just saying the information is not there at all. You have it somewhere in a supercomputer. You need to input it into the pay stub so that the pilots and the flight attendants can actually see that information and determine whether they've been paid correctly. I think that's all I have, Your Honor. Thank you very much. Okay. Thanks very much. The case just argued is submitted.
judges: Watford, Friedland, Rakoff